MOULTON & REMINGTON *vs.* PHILLIPS & SHELDON.

Plaintiffs stored certain carriages in defendants' barn and paid storage. The carriages were injured by the falling in of the roof of the barn overloaded with snow. *Held*, that defendants were bound to furnish a building which was reasonably safe for such storage, and were liable if it proved to be unsafe, unless the defect was one which they did not know of, and could not have discovered by the use of ordinary care.

ACTION of the case to recover damages for the alleged negligent storing by the defendants of the plaintiffs' carriages in an

unsafe building. At the trial of the case at the October Term, 1871, of the Supreme Court for this county, before Mr. Justice *Potter* and a jury, it appeared that the defendants took for storage the carriages of the plaintiffs at an agreed price, which was paid by the plaintiffs, and that they were crushed by the roof falling upon them, the fall being occasioned by the weight of the snow allowed to collect thereon. A verdict having been rendered in favor of the defendants, the plaintiffs moved for a new trial on exceptions taken to the rulings of the judge presiding at the trial, which are fully stated in the opinion of the court.

*B. N. & S. S. Lapham*, for the plaintiffs, in support of the motion, cited Redfield on Carriers & Bailments, pp. 549 (§ 690), 555, and 556 ; *Geddes & wife* v. *Metropolitan R. R. Co.* 103 Mass. 395 ; and *Francis* v. *Cockrell*, Law Rep. 5 Q. B. 501.

*Miner*, for the defendants, *contra*, cited 2 Kent's Com. 566, and *Edson* v. *Weston*, 7 Conn. 278.

BRAYTON, C. J. This action was brought by the plaintiffs to recover of the defendants damages done to the plaintiffs' carriages, stored in the barn of the defendants, by the falling in of the roof overloaded with snow.

On the trial it appeared that the defendants had received the price for storage. What the facts were in other respects, or what other evidence was offered, does not appear.

Before the case was submitted to the jury, the judge, before whom the trial was had, was requested to charge the jury, that if the barn was not reasonably fit and safe for the purpose of storage, the defendants were liable, which instruction the judge refused to give.

From the facts which are disclosed, that the goods were stored in the defendants' building and storage paid by the plaintiffs, the relation of the parties was that the defendant was a depositary for hire of the plaintiffs' goods, and from that relation arose a duty on the part of the defendants to keep them with reasonable care, so that they should not be lost or injured for want of such care as prudent men usually bestow upon their own goods. This is applicable to every such bailee, of which class are warehousemen, wharfingers, &c. If they use that degree of care, they are not liable further.

The rule which the judge was requested to give the jury

would make every warehouseman, or other such bailee, an insurer against loss for any defect in the building in which the goods were deposited, whether attributable to the negligence of the defendant, or whether discoverable by any ordinary care, and even for defects not discoverable by any amount of care. It ignores the idea of ordinary care. The judge could not give the jury any such rule. It is supported by no authority. The case read at length before us, and upon which reliance was made to warrant a new trial in this case, holds to no further liability in case the building was not reasonably safe, than for defects which could have been discovered by ordinary care, and not latent defects which could not be ascertained with the exercise of such care. In the case of *Francis* v. *Cockrell*, Law Rep. 5 Q. B. 501, a building was erected by the defendant, by contract with another person, for viewing a public exhibition, a steeple chase. The plaintiff was admitted to a seat there on payment of 5s. It was in fact improperly and insecurely built. The defect, however, was unknown in fact by defendant, because he did not see the work in its progress and ascertain if his servants did their duty. It was held that as it was built for that particular purpose and let for that purpose, that there was an implied agreement that it was reasonably safe and proper for the use.

But this implied contract did not extend to defects that were unseen, unknown, and undiscoverable by the exercise of reasonable skill and care, by ordinary and reasonable means of inquiry and examination, — to defects not existing by the defendants' negligence. Kelly, C. B. Martin, B., agreed in this view, and said it was the duty of a person so holding out a building of this sort to have it fit and proper for the safe reception. Keating, J., preferred to state the defendant's liability or his undertaking to be that due care, that is reasonable care, had been exercised in the erection of that stand which he so let out for the use of the public. Cleasby, B., did not put the decision on the ground of contract, but said : " I think the plaintiff relied upon the thing itself being in a proper state, and as the fault — breach of duty of the defendant — was that it was not in that state, the plaintiff is entitled to recover in this action." Montague Smith, J., said : " I think, in conformity with the decision in *Redhead* v. *Midland Ry. Co.* Law Rep. 2 Q. B. 412 ; 4 Q. B. 379, that there was

no warranty or insurance that the stand was absolutely safe ; but I think that there was an implied undertaking on the part of the defendant that due care had been used in the construction . . . . so far as the exercise of reasonable care and skill could make it so." They all held that there was a want of reasonable care in the construction, and with the exercise of such care the defects would have been known, and from negligence they did not know.

In the case of *Brazier* v. *Polytechnic Institution,* 1 F. & F. 507, the building was altered by defendants after it came into their possession, by which it was weakened and rendered unsafe. They were held liable upon the same principle.

But in another case, *Pike* v. *Polytechnic Institution,* 1 F. & F. 712, where the building came into defendants' possession with the defects that made it unsafe, existing by the negligence of former proprietors, but unknown to the defendants, they were held not liable, because defects not occasioned by any negligence of theirs and not discoverable by ordinary care. The case, when examined, holds that the parties are bound to use ordinary care, ordinary diligence and attention to the condition of the structure. The difference seems to be in their means of knowledge ; if they construct or alter, they must know whether properly done or not, and not to know argues want of care.

Another ground of error stated in the plaintiffs' brief is that the judge, though he refused to charge as requested, did charge the jury, that if the barn was not reasonably fit and safe for the purpose, and the defendants knew it, they would be liable. This direction, so far as it goes, is favorable to the plaintiffs. Its correctness is not questioned. The objection to it is, that as stated out of its connection with other directions given to the jury, and indeed, as the counsel insist, with it, it leaves the implication that the defendants would not be liable, unless they knew the building was unsafe, though it was unknown purely from want of care and diligence which prudent men bestow. The judge, however, had charged the jury as to the liability and duty of one who takes in charge the goods of another, as a warehouseman, and had concisely stated the rule to be that he was bound to exercise ordinary care, which he assumed to be such care as a prudent man would take of his own goods. He had

stated further that this ordinary care might vary according to circumstances, and in view of the request to charge, and of the authorities then cited and now read, said that more care might be expected when a building was erected purposely as a warehouse, and the owners advertised it as such, and invited custom, and in that case he held it out as suitable for that purpose, and there was an implied understanding that it should not be overloaded, and in such case the language of the request was substantially correct. That the case was different where one had spare rooms, and took the goods of another into them for accommodation; that the person receiving goods on deposit did not warrant the safety of the building; but if he knew, or had reason to know that it was unsafe, he ought not to take goods on deposit; and in judging if the proper degree of care had been exercised, they might take into consideration the manner of erecting the building, and the fact that defendant exposed similar goods of his own to the same danger. Taking the whole charge together with all the directions given, we think the jury must have understood that it was not sufficient to relieve the defendant from liability that any defects by which the injury was caused were unknown, if they were such as by ordinary care they might or would have known, which they were negligent in not discovering. The care required extended not merely to providing against dangers known, but to ascertain such as might be seen and known by a prudent man, and ordinary care must be extended to both.

*New trial denied.*

The following opinion in concurrence was drawn up by

Durfee, J. The plaintiffs requested the judge to instruct the jury that if the barn, the falling in of which injured their carriages, was not reasonably fit and safe for the purpose of their storage, the defendants were liable; and the judge in reply said that " the language of the request was substantially correct; that the person receiving the goods on deposit did not warrant the safety of the building, but that if he knew, *or had reason to know* it was unsafe, that he ought not to take goods on deposit; and that in judging whether the proper degree of care had been exercised, the jury might take into consideration the manner of erecting the building, and the fact that the defendant exposed similar property of his own to the same danger." The plaintiffs object that,

by this charge, the jury were left to infer that the defendants were not liable, if the injury resulted from an unknown defect; whereas, at the utmost they would be relieved from liability only in case the injury resulted from some latent defect that could not have been discovered by the use of ordinary care. The plaintiffs state too broadly the inference which the jury were left to draw. The judge charged that the defendants would be liable if they knew or *had reason to know* that the building was unsafe; and he had already charged that "the rule in cases of warehouse-ing goods was, that the person taking them in charge was bound to the exercise of ordinary care, such as a prudent person would take with his own goods." If, therefore, the defect was discov-able by the use of ordinary care, it was a defect which the defendants had reason to know, it being their duty to know it under the rule as laid down by the judge. Taken as a whole, the charge imported that it was the duty of the defendants to furnish a building which was reasonably fit and safe for the storage of the carriages of the plaintiffs, and that if the building proved to be unsafe, the defendants would be liable unless the defect was a defect which they did not know, and which they could not have discovered by the use of ordinary care. I do not think there is any error in the charge so understood, which entitles the plaintiffs to a new trial.